IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CR No. 17-00367-JAP |
| | ) | |
| vs. | ) | |
| | ) | |
| **VALERIE CAYATINETO**, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' SENTENCING MEMORANDUM AND
## REQUEST FOR UPWARD DEPARTURE AND/OR UPWARD VARIANCE

The United States respectfully submits this Sentencing Memorandum for the Court's

consideration and requests that the Court depart upward and/or vary upward from the

recommended sentence under the Guidelines.  The Defendant recklessly and senselessly took the

life of another human being. Pursuant to U.S.S.G. § 5K2.14, the public safety and welfare was

significantly endangered by the Defendant's extreme recklessness, which justifies an upward

departure.  Alternatively, the 18 U.S.C. § 3553(a) factors also support an upward variance from

the recommended Guideline range.  In support of this position, the United States submits the

following.

## FACTUAL BACKGROUND

The Court is aware that this matter results from a vehicular homicide committed by

Defendant Valerie Cayatineto within the exterior boundaries of the Navajo Indian Reservation in

McKinley County.  Presentence Report ("PSR") at ¶¶ 1-2.  On December 10, 2016, Defendant,

while intoxicated, drove her vehicle into the opposing lane of travel on BIA Road 48 in

Littlewater, New Mexico, causing the vehicle to crash head-on into John Doe's vehicle. *Id*. at ¶¶ 6-7. As a result, John Doe, the driver, was killed. *Id* at ¶ 8. All parties were enrolled members of the Navajo Nation at the time of the incident. *Id*. at ¶ 6.

A witness observed the Defendant sitting in her SUV on the side of BIA 48 road prior to the collision. *Id*. at ¶ 7. Just prior to the incident, the Defendant made calls or sent texts to her sister, Marsha Morgan, stating that she loved her children and to take care of them. *Id*. at ¶ 6. Around 11am that day, the 911 dispatch received information from the Defendant's mother, Martha Morgan, that the Defendant was intoxicated, hysterical, emotional, and contemplating suicide. *Id*. Shortly thereafter, a caller reported that she drove upon a head-on collision involving two vehicles. *Id*. The drivers of those vehicles were the Defendant and John Doe.

Both the Defendant and John Doe were taken to Crownpoint Indian Health Facility. *Id*. at ¶ 8. The attending doctor pronounced John Doe's death. *Id*. He suffered a laceration to his head and suffered massive internal injuries to his chest. *Id*. John Doe's autopsy determined he died of blunt force trauma to the head and trunk. *Id*.

While at the hospital, the Defendant's blood alcohol content was determined to be .21%. *Id*. at 9. The defendant made statements to hospital staff that she wanted to die, "I will finish this," and "I will die, you can't stop me." *Id*.

The official accident reconstruction report shows the Defendant was driving 87 miles per hour as she went into a curve on BIA 48. *Id*. at 10. The Defendant drove from the eastbound lane across the double yellow lane into the westbound lane and onto the paved shoulder of the westbound lane. *Id*.

The PSR reflects United States' Probation assessment that the Defendant was suicidal prior to the crash. *Id*. at ¶¶ 82-83. As detailed below, Defendant's drinking before the incident

2

and her desire to harm herself in a drunk-driving episode are clear indicators of a reckless

attitude and an extreme and callous disregard for the safety of the community and warrant an

upward departure and/or upward variance from the recommended guideline range.

## PROCEDURAL BACKGROUND

Defendant was indicted on violations of 18 U.S.C. §§ 1153 and 1112, involuntary

manslaughter. Doc. 18. On May 31, 2017, the Defendant entered a guilty plea, without the

benefit of a plea agreement, to the single-count Indictment.  Doc. 36-37. The court allowed her to

remain on pretrial services supervision pending sentencing and reside at the La  Pasada Halfway

House. PSR at ¶ 4. On July 21, 2017, the Defendant tested positive for buprenorphine

(suboxone) which she admitted to illegally obtained from a coworker. Doc. 38. She was arrested

and remains in custody. Doc. 47.

United States Probation calculated an advisory guideline range of 30-36 months based on

a total offense level of 19 and a criminal history category of I.  PSR at ¶¶ 32, 36, 67. They also

recommended an upward departure/variance based on § 5K2.1

The United States maintains that an upward departure from the recommended advisory

guideline range of 30-36 months is warranted in this case.  U.S.S.G. § 5K2.14. The United States

asserts this departure is supported by the extreme danger to the safety and welfare of the public

posed by the Defendant's reckless and dangerous actions.  Alternatively, the 18 U.S.C. § 3553(a)

factors support an upward variance from the recommended Guideline range.

## ARGUMENT

A majority of sentences handed down by federal courts fall within a range of

imprisonment governed by the United States Sentencing Guidelines (the "Guidelines") which are

advisory, rather than statutorily mandated.  *See United States v. Booker*, 543 U.S. 220 (2005).

3

However, for a case which is not typical, or one that falls outside the "heartland" of cases, a federal court may depart or vary from the prescribed sentencing range and issue a lower or higher sentence than that outlined in the Guidelines. *See* 18 U.S.C. § 3553(b).

The government's case against Defendant is *not* a typical case of involuntary manslaughter.  Indeed, Defendant's criminal conduct falls outside the heartland of such cases and special factors present in the case warrant an upward departure from the Guidelines.

A sentencing court is permitted to depart from the Guidelines after determining a defendant's offense level, criminal history category, and the applicable Guideline range if the court finds aggravating circumstances that are not adequately taken into consideration by the Guidelines. *United States v. Whiteskunk*, 162 F.3d 1244, 1248 (10th Cir. 1998).  Factors such as threat to public safety and excessive recklessness are matters that may be considered by this Court in deciding whether to depart form the applicable Guideline range set forth in the PSR. *See* U.S.S.G. §§ 5K2.0, and 5K2.14; and *Whiteskunk*, 162 F.3d at 1250.  Alternatively, because the factors enumerated in 18 U.S.C. § 3553(a) are present in this case, the United States also requests the Court's consideration in an upward variance outside the advisory guideline range as recommended by the PSR.

The government requests that the Court depart upwards and/or vary upwards a total of eight (8) levels for Defendant's excessive recklessness and endangering of public safety, and for conduct covered by the 18 U.S.C. § 3553(a) factors.  The adjusted offense level would be to offense level 27, resulting in a guideline sentence of 70 to 87 months.

**I.      An Upward Departure is Warranted Because the Defendant Endangered the Public Safety Under U.S.S.G. § 5K2.14, and Acted with "Extreme Recklessness."**

The Tenth Circuit has identified two separate, permissible factors that support an upward departure in vehicular manslaughter cases:  endangering public safety pursuant to U.S.S.G. §

5K2.14, and "extreme recklessness."  U.S.S.G. § 5K2.14 provides: "If national security, public health, or safety was significantly endangered, the court may increase the sentence above the guideline range to reflect the nature and circumstance of the offense."  The application note to U.S.S.G. § 2A1.4 defines "reckless" as the disregard of a risk that "constitute[s] a gross deviation from the standard of care that a reasonable person would exercise in such a situation."

In *United States v. Jones*, 332 F.3d 1294, 1297 (10th Cir. 2003), a vehicular manslaughter case, the Court affirmed a one-level upward departure under § 5K2.14 for significant danger to public safety and four levels for extreme recklessness where defendant was driving with a BAC over twice the legal limit when he crossed the center line of the highway, killing three family members.  *United States v. Clampitt*, 967 F.2d 592, 1992 WL 120463 (9th Cir. 1992) (unpublished decision) (upward departure under U.S.S.G. § 5K2.14 was warranted as defendant's drunk driving created a serious threat to the public welfare that was not accounted for in the Sentencing Guideline for involuntary manslaughter).

In *Whiteskunk*, the Tenth Circuit held that a sentencing court may properly consider the varying degrees of recklessness in making its heartland determination. *Whiteskunk*, 162 F.3d at 1250-53 The Court noted that "[e]ven though recklessness, like endangering the public, was already considered under the involuntary manslaughter Guideline . . . it is still permissible for the district court to consider the degree of recklessness and, within its discretion, depart upward if the facts take the case outside the 'heartland' of typical cases within the Guideline range." *Id.* at 1251.

The *Jones* Court considered the defendant's high BAC, which was over twice the legal limit, and prior drunk-driving convictions as factors in determining the degree of recklessness. *Jones*, 332 F.3d at 1302.  In *United States v. Pettigrew*, 468 F.3d 626, 641 (10th Cir. 2006), the

Tenth Circuit affirmed a two-level upward departure where the defendant crossed the highway against traffic while driving with a BAC over three times the legal limit.  In addition to a BAC of more than twice the legal limit, the *Whiteskunk* Court also considered that on the day in question the defendant had opportunities to correct her behavior.  *Whiteskunk*, 162 F.3d at 1252-53.

Courts have also looked to factors in addition to BAC including excessive speed when assessing an upward departure for extreme recklessness.  In *United States v. Zunie*, 444 F.3d 1230, 1236-37 (10th Cir. 2006), defendant, who was driving his one-ton truck while intoxicated, drove so erratically while exceeding the speed limit by over 25 miles per hour that he forced five or six vehicles off the road, crossed the center line into opposite lane of traffic, and despite the victims' attempts to evade collision, struck their vehicle head-on.  The Court found a two-level upward departure warranted given that defendant's reckless driving significantly endangered the public safety.  *Id.*  In *United States v. Rowbal*, 105 F.3d 667, 1996 WL 747911 (9th Cir. 1996) (unpublished decision), the defendant was traveling 60 to 80 miles per hour in a 25-mile per hour zone surrounding a hospital, with a BAC over twice the legal limit, and several individuals had to take evasive measures to avoid the defendant's vehicle.  The Ninth Circuit affirmed a two-level upward departure from the involuntary manslaughter guideline after agreeing that the defendant's "extreme intoxication, reckless conduct and callous disregard for the safety of others" were factors that were "present to an exceptional degree."  *Id.* at *2; *see also United States v. Cicero Two Crow*, 124 F.3d 208, 1997 WL 572862 (8th Cir. 1997) (unpublished decision) (affirming an upward departure when the defendant was driving 77 mph with a BAC of .318); *United States v. Chambers*, 940 F.2d 653, 1991 WL 137232 (4th Cir. 1991) (unpublished decision) (affirming an upward departure where the defendant was driving 100 mph with a BAC of .218, tried to avoid arrest, and had prior convictions for driving while intoxicated).

The facts of this case are strikingly similar to those in which the courts have departed upward for endangering the public welfare and for excessively reckless conduct. Here, the Defendant's blood alcohol content was nearly three times the legal limit and she had every opportunity to choose not to drink and drive. PSR at ¶ 9. *Cf. Whiteskunk*, 162 F.3d at 1252-53 (defendant had several opportunities to correct her behavior before the incident). She was attempting to end her life that day through a drunk-driving accident, doing so with indifference and reckless disregard for innocent lives.

Defendant also endangered the lives of others by speeding while driving drunk. The black box from Defendant's vehicle revealed that she was traveling 87 miles per hour as she entered into the curve on BIA 48. PSR at ¶ 10. The Defendant's estimated speed at impact was 45 mph and it did not appear the Defendant steered to avoid the collision. *Id.* John Doe was slowing down and steered to avoid the collision. *Id.* This evidence strongly indicates that defendant intended to kill herself, without regard to the safety of others, by driving head-on into oncoming traffic. Her head-on collision with the victims' vehicle was devastating enough, but had she hit any other vehicle(s) near her other families could have also been destroyed. Defendant knowingly and intentionally drove drunk, smashing her vehicle into John Doe's vehicle resulting in John Doe's death. PSR at ¶¶ 11-12. The collision and resulting death was foreseeable to a defendant who chose to drive drunk and who sought to end her life in a drunk-driving episode, as discussed in greater detail below. Defendant was keenly aware that her actions had a substantial likelihood of hurting or killing others. The victim's death is far beyond the typical case contemplated under the guidelines. All these facts support that her conduct clearly threatened the public safety and welfare. Defendant's actions are comparable to the facts in *Whiteskunk* and arguably fall outside the "heartland" of cases from which a federal court may

depart or vary from the prescribed sentencing range and issue a higher sentence than that outlined in the Guidelines. *See* 18 U.S.C. § 3553(b).

The PSR calculates that the Defendant's total offense level is 19.  PSR at ¶ 32.  The government respectfully requests that the Court depart upward in offense level by a total of eight (8) offense levels.  In making this request, the government proffers the following methodology: by way of analogy, a second degree murder resulting in one death would result in a base offense level of 38.  U.S.S.G. § 2A1.2(a). Involuntary manslaughter has a base offense level of 22. U.S.S.G. § 2A1.4(a)(2)(B). The difference between the base offense level for involuntary manslaughter and second degree murder under U.S.S.G. § 2A1.2(a) is 16 levels.  If the Court selected the midpoint of that range, there is an 8-level difference.  In affixing the level of departure at 8 and adding the same to the total offense level after accounting for adjustment and acceptance of responsibility, the resulting total offense level is 27.  In applying an upward departure of 8 levels the Court would be making the reasonable judgment that this Defendant's conduct falls halfway between the "recklessness" that represents the heartland of involuntary manslaughter defendants and the "callous and wanton disregard" that represents the heartland of second degree murder defendants.  An offense level of 27 ranges from months.  Thus, a sentence at the high end would be just below the 8-year maximum sentence for Involuntary Manslaughter. 18 U.S.C. § 1112.  Therefore, the Government requests that the Court depart eight (8) levels to the mid-range of offense level 27, and sentence the Defendant to a maximum of 87 months for Defendant's extreme recklessness and endangering of public safety under U.S.S.G. § 5K2.14.

Such a sentence would more appropriately reflect the facts of this case that take it out of the heartland of involuntary manslaughter cases.  The Defendant's conduct was a serious threat to public safety and welfare resulting in the death of John Doe.  The facts evidence that the

Defendant was seeking to commit suicide at the time of the incident and had no regard for who she would take with her in the process. The community needs protection from this Defendant.

## II.    Alternatively, the 18 U.S.C. § 3553(a) Factors Support an Upward Variance.

An analysis of the 18 U.S.C. § 3553(a) factors dictate that a variance above the post-departure advisory guideline range is warranted and necessary. Pursuant to 18 U.S.C. § 3553(a), "the court shall impose a sentence sufficient, but not greater than necessary" to comply with the sentencing purposes detailed in 18 U.S.C. § 3553(a)(2). In the Tenth Circuit, "[d]istrict courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range." *United States v. Yanez-Rodriguez*, 555 F.3d 931, 946 (10th Cir. 2009).

The Tenth Circuit has upheld an upward variance in a case tragically similar to this one. In *United States v. Rentz*, the defendant collided head on with another vehicle, resulting in the death of one victim and serious bodily injury to the passenger. *United States v. Rentz*, 696 F. App'x 348, 349 (10th Cir. 2017) (unpublished). The defendant admitted she was drinking on the day of the accident and her blood alcohol content registered as a .19 approximately two hours after the crash. *Id.* The defendant's husband reported she called him shortly before the accident, indicating she was suicidal. *Id.* A witness to the incident reported that the defendant was speeding and crossed into the oncoming lane of traffic in front of the victims' vehicle. *Id.* The data recording device recovered from the defendant's vehicle indicated she was traveling 75 miles per hour at the time of the crash. *Id.* According to medical personnel who responded to the accident, Rentz told responders to "let [her] die." *Id.* The district court held that the facts support that "the defendant was suicidal the day of the incident and she intended to harm herself in a vehicular collision, giving no regard to the other innocent lives who would forever be impacted

by such a decision." *Id.* at 350. The court found the defendant acted with extreme recklessness in purposefully crashing her car. *Id.* The court determined an upward variance of six levels was warranted in light of 18 U.S.C. § 3553(a) factors. *Id.*

As such, the United States requests that the Court impose a total sentence of 87 months, based on the following:

A.  Nature and Circumstances of the Offense

As an initial matter, the Court shall consider the "nature and circumstances of the offense and the history and characteristics of the Defendant."  18 U.S.C. § 3553(a)(1).

A death resulting from a vehicular crash is a tragic event, and here, because of the Defendant's conduct, John Doe lost his life. Prior to the incident, the Defendant called or texted her sister, requesting she tell her children that she loved them and to take care of them. PSR at ¶ 6. Her mother also called 911 to report that the Defendant was driving while intoxicated and contemplating suicide. *Id.* It was shortly after 911 received this call that another call came in reporting a head on collision. *Id.* The initial investigation revealed the Defendant drove into the shoulder of John Doe's lane, colliding head on with his truck. *Id.* at ¶ 7. John Doe was pronounced dead at the hospital. *Id.* ¶ 8. An autopsy determined that he sustained blunt force trauma to the head and trunk. *Id.*

The accident reconstruction revealed that the Defendant was driving 87 mph when she drove from her eastbound lane across the double yellow lane into the westbound lane and onto the paved shoulder of the westbound lane. PSR at ¶ 10. It does not appear she steered to avoid the collision with John Doe. *Id.* While at the hospital, it was determined the Defendant's blood alcohol content was .21%. *Id.* at ¶ 9. She also made multiple statements to hospital staff that she wanted to die. *Id.*

B.  <u>The History and Characteristics of the Defendant Warrant an Upward Variance</u>

Defendant has one prior DWI resulting in a criminal history category of I. It appears she has a substance abuse problem considering her use of alcohol at the time of the incident and the prior DWI conviction. She also tested positive for THC at the Crownpoint Healthcare Facility on the day of the incident. *See Discovery*, *Bates 251*. She also used an illegally obtained suboxone prescription while she was on release pending sentencing.  Doc. 38.

C.  <u>The Factors Detailed in 18 U.S.C. § 3553(a)(2) Warrant An Upward Variance</u>

In addition to considering the nature and circumstances of the offense and the history and characteristics of the Defendant, the Court shall also consider:

> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the Defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
>> …
>
> (6) the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a)(1),(2),(6).

> i.  <u>*An Upward Variance Would Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense*</u>

As described herein, the *Jones* Court noted that a district court may consider the "degree" of danger created by the Defendant's conduct, which then "reflects on the 'seriousness' of the offense, in accordance with 18 U.S.C. § 3553(a)(2)(A)." *Jones*, 332 F.3d at 1301.  While all vehicular homicides are tragic and preventable deaths, the facts of this particular case extend well beyond the sense of an "average" case.  This is a case where the Defendant drank enough alcohol that at the time of the collision her BAC was nearly three times the legal limit.  PSR at ¶

11

9.  She was hysterical on the day of the incident and indicated to her family that she was suicidal. *Id.* at 6. Moreover, a witnesses saw the Defendant parked on the side of BIA 48 just prior to the incident. *Id.* at 7. This clearly demonstrates that she was aware she had the power to control the situation, including the power to prevent the collision, yet failed to do so because she wanted to end her life and was not concerned about other lives she would destroy in the process.

In light of the startling details of this case, a significant sentence of imprisonment best reflects the severity of the offense and provides just punishment.  The victim and his family members deserve assurance that this type of incredible recklessness will result in a significant sentence.  Therefore, a sentence varied upward best adheres to the objective of implementing a just and reasoned sentence.

> ii.  *An Upward Variance Would Afford Adequate Deterrence to Criminal Conduct*

Although a sentence within the guideline range will arguably provide deterrence, a sufficient sentence must provide *adequate* deterrence, pursuant to 18 U.S.C. § 3553(a)(2)(B).  A sentence above the guideline range would send a strong message that prospective offenders would be well-advised to consider the severe ramifications of engaging in such extreme behavior as the Defendant.  If a defendant who operates a vehicle at a high rate of speed with a BAC nearly three times legal limit and drives so recklessly and with such utter disregard for others as to deliberately permit her vehicle to collide with innocent citizens ultimately receives a sentence of only 30 to 37 months, such a result could create *inadequate* deterrence.  *See* PSR at ¶ 84.

> iii.  *An Upward Variance Would Protect the Public from Further Crimes of the Defendant*

A sentence varied upward will ensure that the Defendant has an appropriate amount of time to consider her actions.  If the Defendant is released after receiving a guideline sentence of

only a few years imprisonment, there is no adequate assurance that she will refrain from such

extremely reckless behavior that would again put additional innocent lives at risk.  A sentence

varied upward would best protect the public from any further crimes of the Defendant.

     D.   <u>The Variance Requested by the Government Would Not Create an Unwarranted Sentence Disparity</u>

While the concern over preventing unwarranted sentence disparities is well-founded,

courts have repeatedly noted that mitigating this risk is only one factor that should be considered

when imposing a sentence.  *United States v. Martinez*, 610 F.3d 1216, 1228 (10th Cir. 2010).

More specifically, disparate sentences are permitted "where the disparity is explicable by the

facts on the record."  *United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006).  So long as the

imposed sentence falls within the "range of possible" outcomes supported by the circumstances

of the offense, the reviewing court must defer to the district court's judgment. *United States v.*

*McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007).  An examination of the different sentences

imposed in involuntary manslaughter cases indicates that an upward variance in this case would

not create an unwarranted sentence disparity.

In *United States v. Spencer*, the defendant, while driving intoxicated, rear-ended another

vehicle causing the death of the driver and seriously injuring a passenger.  *United States v.*

*Spencer*, 387 F. App'x 841, 845 (10th Cir. 2010) (unpublished).  The court upheld a 96-month

conviction, where 72 months accounted for the involuntary manslaughter charge.  *Id.*  In

*Pettigrew*, the Tenth Circuit affirmed a 126-month sentence, where 72 months accounted for the

involuntary manslaughter conviction.  *Pettigrew*, 468 F.3d at 631.  It is important to note that the

offenses in *Spencer* and *Pettigrew* occurred prior the law change on January 6, 2008, where the

maximum sentence under 18 U.S.C. § 1112(a) was increased from six (6) years to eight (8)

years' incarceration.  In *United States v. Key*, the defendant, while driving intoxicated, was

traveling 75 miles per hour when he collided with the victim's vehicle, which resulted in the death of the driver of the second car. *United States v. Key*, 599 F.3d 469, 472 (5th Cir. 2010). The defendant pled guilty to an assimilated Texas state crime that carried a maximum penalty of 20 years, but the defendant's federal advisory guideline range was 46 to 57 months. *Id.* The court varied upward and imposed a sentence of 216 months. *Id.* at 475.

A review of involuntary manslaughter jurisprudence reveals that courts have imposed lengthier sentences for defendants who kill "innocent" people, as opposed to causing the death of an individual who willingly travels in the same car as the intoxicated driver. While courts have not specifically emphasized this distinction, a review of the sentences imposed under the varying circumstances suggests this is a valid sentencing consideration. *Compare Spencer, Pettigrew and Key with United States v. Jim*, 377 F. App'x 789, 792 (10th Cir. 2010) (affirming a 57-month sentence where the defendant caused the death of two of his passengers while driving intoxicated); *United States v. Benally*, No. CR 09-0047 JB, 2010 WL 1795842 (D.N.M. Apr. 20, 2010) (unpublished) (imposing a 30-month sentence where the defendant caused the death of one of his passengers while driving intoxicated).

Although this case does not involve multiple deaths, the Defendant's incredibly egregious behavior in intending to cause the collision distinguishes this case from the facts in the cases cited herein that imposed 72-month sentences. Notably, 18 U.S.C. § 3553(a)(6) cautions against *unwarranted* sentence disparities. A warranted disparity, such as to discourage the Defendant's extremely reckless and callous behavior, is certainly authorized under the statutory language. The extraordinary facts of this case clearly warrant a sentence varied above the guideline range.

E.  Victim Impact

Defendant's callous and thoughtless actions have forever altered the lives of John Doe's family.  United States Probation interviewed John Doe's wife, M.Y., three of the victim's brothers, his sister-in-law, and one of the victim's older sisters. PSR at ¶¶ at 13-18. John Doe's family members had deep love and affection for him and expressed great sadness and pain over his death.  *Id.* John Doe's family members report they have to pass the scene of the incident on a regular basis and they are constantly reminded of John Doe's death. PSR at ¶¶ 15, 17. The loss of their father has caused his children to cry regularly for their father and have missed a significant amount of school. PSR at ¶ 18.   M.Y. seeks a total of $15,313.97 in restitution for burial costs, fuel and food, lost wages and the victim's truck. PSR at ¶ 19.

F.  Summary

An analysis of the factors detailed in 18 U.S.C. § 3553(a) indicates that the facts and circumstances of this case warrant a sentence higher than the guideline range.  The resulting sentence, sufficient, but not greater than necessary, would reflect the seriousness of the offense, provide adequate deterrence, and protect the public from further crimes of the Defendant. Additionally, the resulting sentence would not result in unwarranted sentence disparities, but instead represents a just result in light of the 18 U.S.C. § 3553(a) factors.

## CONCLUSION

The United States asserts that an upward departure of eight (8) levels is warranted. Specifically, an eight (8) level upward departure is warranted because the Defendant endangered the safety of the public and acted with extreme recklessness.  The Defendant's adjusted offense level would then be 27, resulting in a guideline range of 70-87 months.

Even if this Court were to find an upward departure unwarranted, the 18 U.S.C. § 3553(a) factors warrant an upward variance due to the unique nature and circumstances of this offense and the Defendant's abhorrent conduct.  The United States requests that the Court vary upward and impose a sentence of 87 months.  A total, final sentence of 87 months would be sufficient, but not greater than necessary to comply with the § 3553(a) sentencing factors.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically Filed March 1, 2018*
ELISA C. DIMAS
Assistant United States Attorney
201 Third St. NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274 (telephone)
(505) 346-7296 (facsimile)

I hereby certify that on March 1, 2018, the foregoing was filed electronically through the CM/ECF system, which caused counsel for the Defendant to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

_____/s/_____
ELISA C. DIMAS
Assistant United States Attorney

16